IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                       :          CASE NO. 12-00778

COSTA BONITA BEACH RESORT INC.  :

                             :          CHAPTER 11

        Debtor               :

_____

OPINION AND ORDER

Before the court are three (3) motions filed by DF Servicing, LLC (hereinafter referred to as "DF Servicing"). The first motion was filed on April 19, 2012 to disqualify Debtor's counsel, Charles A. Cuprill, P.S.C., Law Offices (hereinafter referred to as "Debtor's counsel" or "Attorney Cuprill") pursuant to 11 U.S.C. §§327 and 101(14)(C) and Fed. R. Bankr. P. 2014(a) (Docket No. 38). Attorney Cuprill filed his Answer to Motion to Disqualify Debtor's Counsel pursuant to 11 U.S.C. §327 on May 12, 2012 (Docket No. 68). The second motion is DF Servicing's motion to dismiss the case for "cause" pursuant to 11 U.S.C. §1112(b) alleging; (i) that Costa Bonita Beach Resort, Inc. (hereinafter referred to as the "Debtor") filed this case in bad faith; (ii) there is "substantial or continuing loss or diminution and absence of a reasonable likelihood of rehabilitation pursuant to 11 U.S.C. §1112(b)(4) since "...Debtor has no cash flow, is likely balance sheet insolvent, and has no 'going concern' to preserve in bankruptcy, the Debtor's estate faces a serious threat of loss or diminution resulting from the accrual of Chapter 11 administrative expenses;" and (iii) there is no reasonable likelihood of confirmation because a Chapter 11 plan cannot be confirmed within a reasonable time. DF Servicing also argues in the alternative that this Court should abstain from hearing this case and dismiss it pursuant to 11 U.S.C. §305(a)(1) (Docket No. 48). Debtor filed its objection to the motion to dismiss on May 7, 2012 (Docket No. 65). The third motion filed by DF on April 19, 2012 is a motion for the appointment of a Chapter 11 trustee or examiner under 11 U.S.C. §1104(a), or to convert case to Chapter 7 under 11 U.S.C. §1112(b) (Docket No. 37). Debtor filed its Reply to Motion to Appoint Trustee or Examiner, or to Convert to Chapter 7 on May 7, 2012 (Docket No. 64). The court held a hearing on May 16, 2012 in which it denied DF Servicing's Motion to Disqualify Debtor's Counsel

pursuant to 11 U.S.C. §327(a) but informed the parties at the hearing that an Opinion and Order would follow substantiating the same. The court took under advisement the motion to dismiss under 11 U.S.C. §1112(b) and the motion for abstention under 11 U.S.C. §305(a). For the reasons stated herein, DF Servicing's motion to dismiss pursuant §1112(b) is hereby denied. Also, DF Servicing's motion to appoint a Chapter 11 trustee or examiner under §1104(a) is hereby denied.

Procedural Background

Costa Bonita Beach Resort, Inc. filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code for the first time on February 3, 2009 (Case Number 09-00699). During this case, the court entered an Opinion and Order finding that the Debtor satisfied all three (3) prongs of the Single Asset Real Estate ("SARE"), and, as such is a SARE case subject to 11 U.S.C. §362(d)(3) (Docket No. 55, Case No. 09-699). The court also entered an Order modifying the automatic stay to allow creditor DEV, S.E., to continue in state court proceedings for the removal of the illegal easement and the restoration of DEV, S.E.'s land to its original condition by Debtor (Docket No. 225, Case No. 09-00699). The first bankruptcy petition was dismissed on May 10, 2011 (Docket No. 413, Case No. 09-00699) on the grounds that the Debtor failed to comply with this court's Order of April 21, 2011 (Docket No. 409, Case No. 09-00699) and Debtor's failure to maintain adequate insurance. The case was subsequently closed on October 11, 2011.

On February 2, 2012, Costa Bonita Beach Resort, Inc. filed a second bankruptcy petition under Chapter 11 of the Bankruptcy Code. The second petition is the one presently before the court. The 341 meeting of creditors was scheduled and held on March 12, 2012 and was continued to April 23, 2012, and thereafter continued *sine die* due to the motion for disqualification of Debtor's counsel filed by DF Servicing on April 19, 2012 (Docket Nos. 4, 30, & 44). On April 23, 2012 the Debtor filed the Monthly Operating Report corresponding to March 2012 (Docket No. 41). On April 30, 2012 the Debtor filed the Disclosure Statement (Docket No. 53) and the Chapter 11 Plan (Docket No. 54).

On February 8, 2012, Charles A. Cuprill, P.S.C. Law Offices filed its Application for Employment of Counsel for Debtor (Docket No. 6). On February 9, 2012, the court authorized the application of employment of Debtor's counsel (Docket No. 7). On February 29, 2012, Debtor filed a motion submitting amended Summary of Schedules and amended Schedules A, B, D, E, F, G, and

2

an amended Statement of Financial Affairs (Docket No. 14). On March 26, 2012, the Debtor filed the Monthly Operating Report for the month of February 2012 (Docket No. 27). On April 12, 2012, the Debtor filed an amended Monthly Operating Report for the month of February 2012 (Docket No. 34).

Subsequently, on April 19, 2012, DF Servicing filed a Motion for the Appointment of Chapter 11 Trustee or Examiner under 11 U.S.C. §1104(a), or to convert case to Chapter 7 under 11 U.S.C. §1112(b) based on the following arguments: (i) "...Mr. Escribano has grossly mismanaged the pre-petition estate by breaching his pre-petition duties of care and loyalty and by failing to secure an adequate easement for the property owned by the estate, and the gross mismanagement and incompetence continued post-petition by failing to provide accurate financial information on the Debtor's Schedules and SOFA;" (ii) "Based on the testimony at the 341 meeting, the Debtor failed to disclose numerous details of the debts to insiders and other non-secured creditors, and the new lease arrangement;" (iii) "[u]nder the facts, the Debtor may have a significant cause of action against the Commonwealth of Puerto Rico to recover the use of the most valuable asset of the estate the existing access easement, but Mr. Escribano has failed to do so insisting in a Quixotic quest to win at all cost against DEV, S.E.;" (iv) "Mr. Escribano has violated his fiduciary responsibilities to the estate by breaching his duty of care and loyalty. Pre-petition, while the Debtor was becoming insolvent, rather than curb his excessive withdrawals from the corporation, he took a salary of approximately $600,000, and granting to himself a security interest over furniture and personal property under his control;" (v) Mr. Escribano also breached his fiduciary duties by "causing the Debtor to ignore a state court order which required the Debtor to relocate the access over DEV, S.E.'s property to the duly constituted easement;" (vi) "... Mr. Escribano has resisted and made only pro-forma filings at the Commonwealth of Puerto Rico and the United States of America governmental entities with jurisdiction, and has failed to adequate[ly] prosecute or make claims for the benefit of the estate and the creditors" (vii) "Mr. Escribano is incapable of conducting an independent and unbiased evaluation of the finances of the Debtor. The Debtor owes him too much money not to have an inherent conflict of interest;" (viii) "...the financial information provided indicates that while Mr. Escribano was in control of the Debtor pre-petition, the Debtor's income decreased, while its expenses significantly increased;" and (ix) "[i]t is in the best interest of creditors to have an

independent trustee to assume control over the estate, to evaluate any preferential or fraudulent transfer actions, to pursue those actions, and to potentially provide a return to the unsecured creditors" (Docket No. 37, pgs. 13-16).

On April 19, 2012, DF Servicing filed a Motion to Disqualify Debtor's Counsel Pursuant 11 U.S.C. §327 presenting the following arguments: (i) Debtor's counsel is not truly "disinterested" as required by 11 U.S.C. §327(a) and as defined pursuant to 11 U.S.C. §101(14)(C); (ii) "[f]rom the records of the [p]rior [b]ankruptcy [c]ase or the present chapter 11 case, there is no evidence of payment of the pending balance of $65,241.14, which includes the withdrawn compensation of $31,028.77, owed by the Debtor to the Charles A. Cuprill, P.S.C., Law Offices prior to the dismissal order or any evidence that Charles A. Cuprill, P.S.C., Law Offices wrote-off such unpaid fees and waived any claims against the Debtor that it had prior to its new filing;" (iii) Debtor's counsel failed to adequately disclose the source (whether the payments were provided by insiders, principals and/or third party creditors) of the payments received pursuant to 11 U.S.C. §327(a) and Fed. R. Bankr. P. 2014(a); (iv) "[s]ome courts have held that a debtor's counsel whose retainer or fees are funded by a creditor of the debtor is *per se* disqualified from representing the debtor in possession;" and (v) "... the Court could conclude that the mere payment of the fees by a creditor/guarantor/principal/insider, the failure to adequately disclose the payment by such creditor/guarantor/principal/insider and/or the possible write-off of the fees and employment of the Charles A. Curprill, P.S.C. Law Offices would create a disqualifying interest or conflict, where the pre-petition connection between Debtor's counsel and creditor/guarantor/principal insider call into question whether counsel was "serving two masters." (Docket No. 38).

On April 23, 2012, the court ordered the Debtor to file an objection within fourteen (14) days to DF Servicing's Motion for Appointment of Chapter 11 Trustee or Examiner under 11 U.S.C. §1104(a), or to convert under 11 U.S.C. §1112(b). The court also scheduled a hearing to be held on May 16, 2012 if a timely opposition was filed (Docket No. 46). On that same date, the court ordered that the Motion to Disqualify Debtor's Counsel pursuant to 11 U.S.C. §327 be included amongst the motions to be considered at the May 16, 2012 hearing (Docket No. 47).

Also, on April 23, 2012, DF Servicing filed a Motion for Entry of an Order Dismissing the

4

Debtor's Chapter 11 Case pursuant to Section 1112(b) and/or 305(a) of the Bankruptcy Code, with prejudice, premised on the following: (i) Debtor filed its petition in bad faith or lack of good faith which constitutes "cause" for dismissal; (ii) DF alleges that Debtor's bankruptcy filing includes nearly all of the indicia of bad faith filings, such as: (1) Debtor is a single real estate case subject to 11 U.S.C. §362(d)(3) as determined by this Court's Order in the prior bankruptcy case (Case No. 09-00699, Docket No. 55); (2) "...the Debtor has few unsecured creditors–the list of non-insider creditors holding the largest unsecured claims filed with its Petition included only 20 non-insider unsecured creditors amounting to $471,059.32 amount of 79% compared to the total secured debt of Lender of over $4.8 million;" (3) the real estate property was on the verge of being foreclosed by way of summary judgment in state court proceedings when the Debtor filed its second bankruptcy petition; (4) this is a two party dispute between Debtor and DF Servicing which can be resolved with the foreclosure sale of the property; (5) "[t]he timing of the filing indicates intent by the Debtor to delay or frustrate Lender's legitimate efforts to enforce its rights pursuant to a foreclosure judgment;" (6) the non-payment of the Note evinces that Debtor has little or no cash flow; (7) Debtor is unable to pay home owner association fees, personal and real estate taxes, as evidence by proof of claims numbers 9, 10, 11 & 12; (8) Debtor is a real estate development company created for the development and sale of a condominium complex on the real estate property and has no employees; (9) "[o]ther than the DEV, S.E. [e]asement [c]ase, there is no pressure from non-moving creditors on the Debtor to collect on the debts owed by the Debtor; (10) Debtor's first bankruptcy petition was dismissed for Debtor's failure to maintain adequate insurance. "Now the Debtor claims that in an effort to implement the previously filed plan of reorganization, it filed the present chapter 11 case;" (11) "[t]he Debtor has no possibility of reorganization as particularly explained herein, coupled with the fact that it has failed for over 3 years to secure an access point to the Property;" (12) "Debtor filed solely to create an automatic stay and forestall the inevitable foreclosure of the real estate property, as no controversy of fact exists in the [f]oreclosure [c]ase;" (13) "[t]he subjective intent of the Debtor's new bankruptcy filings is eloquently described by the Debtor in its most recent Report in Compliance with Order (Docket No. 260, that the reason for filing the petition was '... a result of the economic deterioration of Puerto Rico's real estate market, especially that for second homes; Debtor has

suffered a significant impact reducing its sales. This situation and Debtor's controversy with DEV, S.E., regarding the access to the Project coupled with the sub-prime banking crisis, surplus of new homes in Puerto Rico, and the lack of financing for second homes has stalled the sales of the units at the Project resulting in Debtor's inability to pay its secured loan and other obligations.' This potpourri of reasons are subjective interpretations of the failing of the Debtor's sell out of al[l] condominium units; however they disguise the real objective reasons for filing: The Debtor's failure to (a) recognize the warning signs of the real estate market for second homes, (b) negotiate a settlement with DEV, S.E. under reasonable terms and conditions prior to being forced by the State Court to relocate the illegally built access point, and (c) Debtor's failure to propose a reorganization plan that includes substantial capital contributions from its shareholders to meet the short and long term obligations of the Costa Bonita Beach Resort, instead of trying to finance it on the cheap with other people's money;" (14) the Debtor's bankruptcy case serves no valid bankruptcy purpose because Debtor is not a "going concern" since it has no employees or income producing operations; and (15) the Debtor's case was commenced primarily as a litigation tactic to frustrate DF Servicing's exercise of its remedies, which is not a good faith purpose for invoking bankruptcy protection (Docket No. 48). DF Servicing also argues that this case should be dismissed under 11 U.S.C. §1112(b)(4)(A) because; (i) "Debtors's Schedules and Statement of Financial Affairs in this new case, show a substantial and continuing loss to or diminution of the estate when compared to the Schedules and Statement of Financial Affairs in the [p]rior [b]ankruptcy [c]ase;" (ii) Debtor has no reasonable likelihood of rehabilitation because a chapter 11 plan cannot be confirmed within a reasonable time; (iii) Debtor has failed to sell any units since May of 2009; and (iv) Debtor is leasing the remaining unit inventory at below market rates to an entity controlled by an insider and most of the income derived will be used for administrative expenses at the expense of other creditors (Docket No. 48). DF Servicing in the alternative argues that this court should abstain from hearing this case and dismiss it pursuant to 11 U.S.C. §305(a) based upon the following: (i) this is a two party dispute which is pending final disposition of the real estate property in a foreclosure sale in state court; (ii) "[g]oing forward with this bankruptcy case only adds an additional and unnecessary layer of litigation and expenses to the dispute between the Debtor and [DF Servicing], and delays [DF Servicing] from

6

realizing on its collateral after the Debtor has been in default under the loan documents since 2008 and after [DF Servicing] and the Debtor have already been involved in litigation for over two years;" (iii) the state court forum is available to decide the issues and protect the interests of the Debtor and DF Servicing in particular the summary judgment for the foreclosure of the real estate property; (iv) this case was filed to prevent a judicial sale of the property in the state foreclosure case; (v) DF Servicing will be prejudiced if Debtor's case is not dismissed because it will delay the execution of its contractual and legal rights to sell the property to satisfy its debts; (vi) the Debtor will not be prejudiced if the case is dismissed because the Debtor's sole asset is subject to DF Servicing's mortgage lien; and (vii) Debtor's unsecured creditors will not be prejudiced if the case is dismissed because they will receive nothing whether the petition is dismissed or not; (viii) the Debtor is using its Chapter 11 petition to delay the inevitable foreclosure sale of the property (Docket No. 48).

On April 24, 2012, the court ordered the Debtor to file an objection within fourteen (14) days to the Motion to Dismiss with prejudice under 11 U.S.C. §1112(b) and included the same amongst the motions to be considered at the May 16, 2012 hearing (Docket No. 49).

On May 7, 2012, the Debtor filed its Reply to Motion of DF Servicing for the Appointment of a Chapter 11 Trustee or Examiner under 11 U.S.C. §1104(a), or to Convert Case to Chapter 7 under 11 U.S.C. §1112(b) arguing the following; (i) the payments that were made prior to the filing of the second bankruptcy petition were made in the ordinary course of business to both insiders and unsecured creditors and no payments were made to insiders within the ninety (90) days prior to the filing of the bankruptcy petition (a detail listing of the payments rendered is provided by Debtor on pg. 4 of Docket No. 64); (ii) the 24 non-segregated residential units are being leased below market value but they are generating income which in addition to the capital contributions and/or loans from its shareholders helps Debtor with its ordinary course of business expenses; (iii) the determinations of the governmental agencies denying Debtor's applications for the permits to relocate the access road as established by the state court were denied because the access road was located on a maritime terrestrial zone; (iv) thus, Mr. Escribano directed his efforts towards finding an alternate access road which would not affect the maritime terrestrial zone and would not interfere with DEV, S.E.'s property; (v) the Costa Bonita Home Owners Association's claim for unpaid maintenance fees of

residential units and of the commercial facilities ($113,520.44) in addition to its unsecured claim (in the amount of $396,527.00) will be paid in full by the transfer of three (3) residential units to the Costa Bonita Home Owners Association; (vi) as part of the Debtor's Plan of Reorganization, it will surrender thirty-five (35) residential units to creditors as payment in kind, retaining nine (9) residential units for sale, thus reducing significantly the related expenses; (vii) CRIM's proof of claim for real property taxes will be paid from the net proceeds of the sale of the residential units and commercial facilities of Costa Bonita, in a period not to exceed 48 months from the filing date; (viii) Debtor's shareholders have committed to advance/loan the necessary funds for Debtor to implement its Plan of Reorganization for the benefit of all creditors; (ix) "...the amounts owed to Eng. Escribano for salaries, loans and advances, ($715,659.29) such amounts refer to eleven (11) years of professional services of which, as evidenced by the payments, above-mentioned, Eng. Escribano has only been paid $4,390.00;" (x) the appointment of a Chapter 11 trustee under 11 U.S.C. §1104(a)(1) is not necessary in this case because none of the factors; such as misuse of assets and funds, inadequate record keeping and reporting, lack of appropriate cost controls, nonpayment of taxes or conduct constituting fraud or dishonesty, are present in this case; (xi) "[i]n general, when transactions between affiliates are called into question, a trustee will not be appointed unless the moving party can show that the affiliate transactions were improper, were detrimental to the estate or involved actual fraud, none of which factors are present in this case;" and (xii) in this case, "...the protection of a Chapter 11 trustee is not only needed, but the costs and expenses of such a trustee would be disproportionately higher than the value of such an appointment" (Docket No. 64).

On May 7, 2012, the Debtor filed its Objection to Dismiss alleging the following; (i) the issues presented by DF Servicing for "cause" for the dismissal of the case with prejudice have no evidentiary basis, given that, "...Debtor has already filed a Plan that has a reasonable likelihood of being confirmed, Debtor's cash flow has improved, Debtor's shareholders are willing and able to further contribute funds and accomplish the relocation of the access to the Project, and Debtor has a right to protect its Project, as well as all other of Debtor's creditors from DF [Servicing's] predatory actions. Indeed this is the purpose of Section 362(a) of the Bankruptcy Code;" (ii) the relocation of the access to the Project will enable the Debtor resume its sales and marketing plan; (iii) all creditors,

except the general unsecured creditors, will be paid the equivalent value of their claims with residential units; (iv) the payment to the Costa Bonita Home Owner's Association and others, including DF Servicing, is not dependent on future sales of residential units; (v) "DF [Servicing's] allegations as to Debtor having no income and no foreseeable prospects for a successful reorganization are vacuous. As mentioned above, Debtor has lease contracts for its remaining residential units and commercial facilities, which are serving the purpose of producing income and assisting Debtor in obtaining the necessary funds to pay, along with capital contributions and/or loans from its shareholders, Debtor's expenses in the ordinary course of business until the implementation of the plan;" (vi) "Debtor's Chapter 11 is not a litigation tactic in essentially a two party dispute, but was filed for Debtor's reorganization as underscored by the Plan and the Disclosure Statement;" (vii) "Debtor's reorganization is more than probable, Debtor has filed its Plan and Disclosure Statement;" (viii) "the Disclosure Statement and the exhibits thereto, clearly evidence, contrary to DF [Servicing's] allegations, that there is no substantial or continuing loss or diminution to Debtor's estate and no absence of a reasonable likelihood of rehabilitation;" and (ix) DF Servicing has failed to provide evidence supporting its allegation that dismissal of the case is in the best interests of all creditors (Docket No. 65).

On May 12, 2012, Debtor filed its Answer to Motion to Disqualify Debtor's Counsel Pursuant to 11 U.S.C. §327 arguing that; (i) the Debtor in its Amended Statement of Financial Affairs corrected the error in line item #3b by including the $74,205.14 received by Cuprill from Debtor, within the year prior to the filing of Debtor's Chapter 11 petition, since the payments amounting to $33,752.39 were made prior to the ninety days of the filing of the bankruptcy petition; (ii) Debtor's counsel in the prior bankruptcy case (Case No. 09-00699) disclosed since the beginning of the case that its payments would come from Debtor and/or Debtor's principals upon application(s) to the Court, as was the case; (iii) all payments to Debtor's counsel in the prior case were made by Debtor or by entities belonging to the shareholders of Costa Bonita Holding Company, Inc.; (iv) Costa Bonita Holding, Inc.,(the sole shareholder of Costa Bonita Beach Resort, Inc.) and its shareholders' interests are aligned with those of the Debtor and thus, the payments made to Debtor's counsel did not provide Debtor's counsel any incentive to act contrary to the best interest of the estate and its sundry creditors;

(v) the payments received by Debtor's counsel in the prior bankruptcy case did not cause any injury to the Debtor's estate, did not prejudice other creditors, and Debtor's affiliates or their shareholders received any advantage; (vi) in the instant case, no payments have been made to Debtor's counsel; (vii) Debtor's counsel satisfies the disinterestedness and absence of a materially adverse interest standards established by the First Circuit since Debtor's counsel, "... does not, nor has represented interests adverse to Debtor at any time. Moreover, Cuprill is disinterested since Cuprill is not Debtor's creditor, equity security holder, or an insider, and does not have an interest adverse to the interests of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason; and (viii) the United States Trustee, who has the duty pursuant to 28 U.S.C. §586(a)(3)(A)(i) and (a)(3)(I) to monitor applications for appointment of professionals under 11 U.S.C. §327 and review applications for compensation filed by professionals and reimbursement of expenses under 11 U.S.C. §330 has not objected to Debtor's counsel application for appointment (Docket No. 68).

On May 14, 2012, DF Servicing filed its motion in compliance with order (Docket No. 49) regarding motion for dismissal by which DF Servicing discloses the statements of uncontested facts, proposed findings of facts and the stipulated evidence (Docket No. 70). On May 14, 2012, DF Servicing filed its Motion in Compliance with Order (Docket #46) Regarding the Motion for the Appointment of Chapter 11 Trustee or Examiner under 11 U.S.C. §1104(a), or to Convert Case to Chapter 7 under 11 U.S.C. §1112(b) by which DF Servicing discloses the statements of uncontested facts, proposed findings of facts and the stipulated evidence (Docket No. 71). On May 14, 2012, the Debtor filed its motion in compliance with Order of April 23, 2012 (Docket No. 46) Regarding the Motion for the Appointment of Chapter 11 Trustee or Examiner under 11 U.S.C. §1104(a), or to convert case to Chapter 7 under 11 U.S.C. §1112(b), by which Debtor includes the statement of uncontested facts, proposed findings of facts and the stipulated evidence (Docket No. 72). Also, on May 14, 2012, the Debtor filed its motion in compliance with Order of April 24, 2012 (Docket No. 49) Regarding Motion for Dismissal, by which Debtor includes the statement of uncontested facts, proposed findings of facts and the stipulated evidence (Docket No. 73). On May 15, 2012, DF Servicing filed a Motion for Entry of an Order for Disqualification of Debtor's Counsel pursuant 11

U.S.C. §327 arguing that; (i) the Charles A. Cuprill, PSC is prohibited from appearing *pro se*, due to its status as a corporation and in conformity with P.R. LBR 9010(c)(1) and (c)(2) that mandates that all persons must be represented by counsel in proceedings before this court, in particular corporations; (ii) Debtor failed to comply with L.Cv.R. 7(b) which requires that the opposing party file its written objection to the motion within fourteen (14) days after the service of a motion, incorporating a memorandum of law, thus waiving its objection; and (iii) pursuant to P.R. LBR 9013-1, if a motion is not opposed in a timely manner, the Court will deem it unopposed and may grant the relief requested unless the relief requested is prohibited by law, is against public policy, or in the Court's opinion, the interest of justice requires otherwise (Docket No. 74).

<u>May 16, 2012 Hearing</u>

On May 16, 2012, an evidentiary hearing was held to consider the following contested matters; (1) the disqualification of Debtor's counsel pursuant to 11 U.S.C. §327; (2) the motion to dismiss under 11 U.S.C. §1112(b) premised on DF Servicing's allegations that Debtor filed its bankruptcy petition in bad faith; and (3) the appointment of Chapter 11 trustee or examiner.

The first issue the court considered was the disqualification of Debtor's counsel. DF Servicing argued that Debtor's counsel is not a disinterested party pursuant to 11 U.S.C. §327(a) because it received payments in the prior bankruptcy stemming from attorney's fees from certain creditors of Debtor; such as Ramallo Brothers Printing, Inc. (payments in the amount of over $40,000), CFM, Inc. (trade name Caribbean Forms Manufacturer, Inc.) (payments in the amount of approximately $30,000), and Inversiones del Caribe, Inc. (trade name Epack). DF Servicing alleges that there was a lack of transparency as to who made the payments to Debtor's counsel which left creditors wondering; (1) whether the payments made by an anonymous third party caused injury to the bankruptcy estate; (2) whether the payments prejudiced other creditors of the estate; (3) whether the creditor, insider or affiliate that made such payments received any specific advantage over other creditors; and (4) whether an actual conflict arose as a result of these payments made to Debtor's counsel. Moreover, Debtor has had to amend its schedules and its Statement of Financial Affairs several times to comply with the necessary transparency required by the Bankruptcy Code. DF Servicing wonders if the Debtor would have disclosed the payments received, if it had not filed the

motion for disqualification of Debtor's counsel.

DF Servicing alleges that Debtor's counsel fails to satisfy the second prong of the disinterested test that includes the adverse interest language pursuant to Sections 327(a) and 101(14) of the Bankruptcy Code because the mere appearance of conflict is sufficient to disqualify counsel. DF Servicing contends that Debtor's counsel may not under any circumstances represent the Debtor and accept monies from a Debtor's principals or affiliated companies which are at the same time creditors of the estate and remain a disinterested person with an actual or a potential conflict under Section 327(a). The issue is that all of those corporations that provided monies are creditors of the estate. DF Servicing also alleges that in the prior bankruptcy estate, Debtor's counsel disclosed incorrectly that the payments would be paid by Debtor or entities belonging to the shareholders of Costa Bonita Holding, Inc. However, Debtor's counsel received payments from separate and independent entities which are creditors of the estate. DF Servicing suggests that the inference, due to the lack of disclosure, could be made that these separate entities are Debtor's alter egos and/or its private piggy banks, suggesting that the corporate veil would have to be pierced.

DF Servicing states that it had to go over every single monthly operating report in the prior bankruptcy case and went over every single statement and check that was issued, since the checks did not add up to the totality of the applications of compensation of the Debtor's counsel. DF Servicing argues that having divided loyalties between the Debtor and its creditors, is inconsistent with the tenets of the Bankruptcy Code since Debtor's counsel would have two masters. Moreover, under Fed. R. Bankr. P. 2014(a), the professional is required to update any circumstances suggesting an actual or potential conflict of interest, which would have been required in this case under the law. DF Servicing's evidence consists of all the monthly operating reports from the previous bankruptcy case regarding where some of the payments came from or did not come from. DF Servicing alleges that if one adds all of the monthly operating reports, a considerable amount was not paid by Debtor. Adding all of the monthly operating reports results in a total of $62,164.19. Debtor's counsel claims that Debtor paid an additional $11,000 with check #149, which does not appear in any of the monthly operating reports filed with the court. Debtor's compensation, including the final application for compensation was for $133,349.26 in request for payments of which Inversiones del Caribe (Epack)

12

paid $12,763, Ramallo Brothers paid over $40,000, and Caribbean Forms Manufacturer paid over $31,000 and approximately $10,000 was written off. DF Servicing argues that Debtor's counsel disqualified himself and his law firm by accepting payments from third party creditors in this particular bankruptcy.

Debtor's counsel argued in response that he is a disinterested person because he is not Debtor's creditor, equity security holder, insider and does not have an interest materially adverse to the estate by reason of any direct or indirect relationship. Debtor's counsel clarified that $9,918.07 was written off as a condonation of that indebtedness. The references made by DF Servicing are only applicable to Debtor's prior bankruptcy proceedings because in the instant proceedings the Debtor's counsel has not received a retainer or compensation, as is evidenced by Debtor's counsel's application for appointment. Moreover, Debtor's counsel proffers that his statements can be taken as a sworn statement by an officer of the court. The application for appointment in the previous proceeding disclosed that the $25,000 retainer was paid by Debtor's principals. The test under Section 327(a) is that Debtor's counsel is a disinterested party and does not have an adverse interest to the estate. Debtor's answer to the motion to disqualify, Docket No. 68, provides an accounting of the applications of interim compensation that were filed in the previous case, including the final withdrawn application for compensation, which amounts to $168,508.54. All applications for compensation disclose at paragraph 7 that the source of the funds to be paid to Cuprill by Debtor would be from available sources of Debtor or Debtor's principals. Paragraph 11 lists all the payments made to Debtor's counsel. Debtor's counsel disclosed that Carlos Escribano is a 50% shareholder of Inversiones del Caribe, Inc. (trade name Epack) and his wife Aida [Ramallo] Diaz is the other 50% shareholder. Caribbean Forms Manufacturer is the trade name of Caribbean Printing Group in reference to which Angel Ramallo is a 45% shareholder, the Ramallo Estate is a 45% shareholder and Esteban Ramallo is a 10% shareholder. Contrary to DF Servicing's posture, all the parties related to the Debtor in this case, which may be considered insiders, as listed in paragraph 11, are entities that are subordinating their payments or interest in the plan that has been filed in this case and no payments will be made to insiders until all creditors are paid. Payments made by insiders to professionals, as well as contributions made by them to cover administrative expenses are for the

13

benefit of the estate and creditors. None of these entities have been represented by the Cuprill Law Firm. Moreover, these entities nor the Cuprill Law Firm have an adverse interest to the estate. All payments made to the Cuprill Law Firm were made by Debtor or by entities belonging to the shareholders of Costa Bonita Holding Company, Inc. which is a shareholder of the Debtor. Debtor's counsel argued that the case of In re Leslie Fay Companies, 175 B.R. 525, under the particular circumstances, the court ruled that debtor's counsel was not disinterested when it failed to disclose to the court in the application of employment that it also represented interests that were materially adverse to the debtor; namely members of the debtor's audit committee which were appointed to conduct an investigation of Debtor's unsupported entries. In this case the attorney that was representing the debtor clearly was also representing parties that had an adverse interest to the estate, which is not the situation in either the prior case or the present one. It is important to point out, that in In re Leslie Fay Companies, the court held that debtor's counsel representation of the debtor's seventh largest creditor with a $700,000 claim on an unrelated matter, was not a basis for disqualification under Section 327(a).

Debtor's counsel argues that Costa Bonita Inc.'s shareholders and their companies' interests are common to those of the Debtor, and the payments made to Cuprill did not, and do not, provide an incentive to act contrary to the best interests of the estate and its sundry creditors. The payments made to Cuprill did not cause any injury to the Debtor's estate, did not prejudice other creditors, and the paying entities or Costa Bonita Holding, Inc. or its shareholders receive any advantage and there was no conflict arising from the payments. Moreover, in the previous case neither DF Servicing, any party in interest, the Office of the United States Trustee, or any creditor raised the issue as to the payments that were going to be received by Cuprill as disclosed from Debtor's principals. The specific facts of this case reveal no adversarial posture on the part of the paying entities in the former Chapter 11 that was dismissed. Cuprill represents not having acted as counsel for any of those parties at any time. There is not even a remote possibility in this case, that the fact that those payments were made would cause the Cuprill Firm to assert any economic interest that could tend to reduce the value of the bankruptcy estate or that would give rise to an actual or potential dispute in which the estate is the rival claimant.

Fed. R. Bankr. P. 2014, requires attorneys to disclose all relevant connections. An attorney does not need to disclose every remote connection with every party in interest. The Cuprill Law Firm does not have any present or recently existing relationship with any of the former paying interest and has never had any business or personal relationship therewith.

The court, after considering the motion for disqualification by DF Servicing, the opposition by the Cuprill Law Firm, and the oral arguments, denied the motion to disqualify Mr. Cuprill as an attorney in this case. The court informed the parties that a separate Order would be entered providing the basis for said conclusion. The court further found that the disclosure of information as it pertains to this bankruptcy petition was adequate and the payments in the prior case do not establish adverse material impact. The court found that Mr. Cuprill may appear on behalf of the professional services corporation. Generally, a corporation has to appear through an attorney. However, in the case of professional services corporation involving attorneys, the attorney may appear and represent himself and/or the corporation. As basis for this holding the court cited the article by Carlos Díaz Olivo, *La corporación profesional*, 68 Rev. Jur. U.P.R. 31 (1999) which references two cases; namely Austrian, Lance & Stewart, P.C. v. Hastings Properties, Inc., 385 N.Y.S. 2d 466 (N.Y. Sup. Ct. 1976), and Benito Muñoz, Inc. v. Productora Puertorriqueña de Alimentos, Inc., 109 D.P.R. 825, 828 (1980). The court also found that even if Mr. Cuprill were a creditor of the Debtor, that by itself is not sufficient to find that he is not a disinterested person. Such was the holding of the First Circuit in the case of In re Martin, 817 F.2d 175 (1st Cir. 1987). Furthermore, the facts, established or proffered do not prove that there was a meaningful incentive to act contrary to the best interests of the estate as determined in Rome v. Braunstein, 19 F.3d 54 (1st Cir. 1994). The court stressed that as to the current bankruptcy case, disclosure is adequate. In the prior case, there were payments by affiliates of the Debtor, even if not fully disclosed in the prior case, they have now been clarified to the court as it relates to the motion to disqualify. As to this case, there have been no payments by creditors.

The next two issues which the parties presented to the court for oral argument and as part of the evidentiary hearing were DF Servicing's motion to dismiss under 11 U.S.C. §1112(b) for bad faith and also its motion requesting that a Chapter 11 Trustee or examiner be appointed to the instant case pursuant 11 U.S.C. §1104(a). DF Servicing did not present any evidence and relied in the uncontested

facts detailed below as support for its motion to dismiss.

At the evidentiary hearing the court took judicial notice that in the state court case there is pending a motion for summary judgment. The court also noted that the First Circuit has not accepted bad faith in the filing of the petition as cause for dismissal.

DF Servicing argued that in this particular case the Debtor is a SARE in which the only asset of the estate is the property. DF Servicing stated that this is a liquidating case, since the property has already been developed and the only remaining thing to be done is to sell the fifty (50) residential units and a commercial unit. DF Servicing further argued that being a SARE is one of the indicia of a bad faith filing. In addition, DF Servicing argues that the following are also indicia of bad faith: (i) Debtor has few unsecured creditors which are non-insiders pursuant to its schedules (Docket Nos. 1, 14, & 39) which the Debtor owes $934,000 consisting mostly of contractors and miscellaneous claims (excluding the DEV, S.E. claim) of which most are small in relation to the amount owed to secured creditors; (ii) Debtor is facing foreclosure proceedings in state court; (iii) this is a two party dispute between DF Servicing against Debtor in particular with respect to the litigious credit issue regarding the right of redemption controversy; and (iv) the only issue pending in state court is the motion for summary judgment requesting the foreclosure of both the personal and real property based on the mortgage notes.

Debtor argues that with respect to the motion to dismiss, the movant has the burden to establish by the preponderance of the evidence standard that there is bad faith and it has failed to do so. Debtor also argued that DF Servicing has failed to establish by the clear and convincing evidence standard that a Chapter 11 trustee or examiner should be appointed. The Debtor clarifies that it owes Doral Bank (which has the perfected security interest in the property), not DF Servicing the $4.8 million. Debtor is not admitting that the lender is DF Servicing. The fact that DF Servicing may have a mortgage on the property, which is a SARE, and that it was pursing foreclosure proceedings in state court, that the Debtor owes monies to DF Servicing is not tantamount to bad faith. Different from the prior case, where the court modified the automatic stay provisions under Section 362 for failure to timely file a disclosure statement and plan of reorganization, in this case the disclosure statement and plan of reorganization were filed prior to the ninety (90) days from the date of the bankruptcy petition,

thus the provisions of Section 362(d) are inapposite to this case. Debtor argues that it has 24 unsecured creditors, which are non-insiders with claims of $1,316,473 in conformity with its schedules, statement of financial affairs and the disclosure statement and plan of reorganization. Debtor has 12 unsecured creditors which are insiders, whose claims add up to $5,078,367, which are subordinating their interests to the other creditors in conformity with the disclosure statement and plan. In addition, to these creditors, there are other classes of creditors as set forth in the disclosure statement and plan. Debtor's position is that DF Servicing has not established bad faith *prima facie*, thus Debtor does not have to establish its good faith upon the filing of the bankruptcy petition.

Debtor proferred that the testimony of Mrs. Escribano will establish that it has a legitimate purpose and intent of reorganizing itself. The testimony of Mr. Carrasquillo's will establish that Debtor has a reasonable likelihood of the plan being confirmed by the court. Moreover, the testimony of Mrs. Escribano will also show that the controversies that existed in reference to Debtor's contention that it would be impossible to comply with the state court judgment regarding the relocation of the easement have been put to rest because Debtor's endeavors in this present case will be to establish the easement of the access to the property on the east side.

DF Servicing argues that what is at stake with respect to the easement issue is that Debtor as of today does not have a signed agreement or a deed that constitutes an easement through the eastern portion of the property. The court stated that it is uncontested that there is an easement issue and the same may present a plan feasibility issue if it gets to the point of confirmation.

*Debtor's first witness: Ms. Aida Escribano*

Ms. Aida Escribano Ramallo, a certified public accountant and Debtor's vice president and secretary testified that she has been related to the Debtor since its inception in the year 2001. The Debtor's original project consisted of 41 clusters with 164 units of which half of them are studios and the other half are one-bedroom villas plus a commercial facility. The project has a dock that is tied to the commercial facility. Debtor's current business is the sale of fifty units of the project plus the commercial facility. Debtor is also engaging in the tourism industry through certain leases with Sea Breeze and they are in the process of renting these units to clients. The commercial facility is a two story building that has a restaurant, a convenience store, the front desk, a private mini convention

17

area that is currently being rented to Sea Breeze Management Corp. Approximately 35 of the units are currently being rented to Sea Breeze Management Corp. and Francisco Falcón, who in turn, are promoting these units as hotel rooms to anybody interested in the same. These units were being leased by the Debtor to provide additional cash flow to continue the reorganization process and to provide exposure to the property to promote the sale of the remaining units on inventory.

The commercial facility was being leased to Sea Breeze Management that is operating the tourist segment of the property which is the restaurant, the pool bar, the convenience store, and the front desk. In the prior bankruptcy case, the Debtor rented some units to Tactical Management or to Costa Bonita Management which did not have the restaurant open and they were not planning to engage in any relationship with the tourism company. The structure was very different since they wanted to start pre-paid vacation programs as is shown by the trip advisor and the facebook page that they had. The leases generate around $15,000-$16,000 a month which is much more than what the prior tenant used to pay. The first lease for the commercial facility was executed on December 7, 2011 between Costa Bonita Beach Resort, Inc. and Sea Breeze Management Corporation for a monthly rent of $5,500. The lease contract was signed by the principal of Sea Breeze Management Corporation, Javier Cela and the president of Costa Bonita Beach Resort, Inc., Carlos Escribano Miró (Exhibit A-Evidentiary Hearing). This lease was for three (3) months and the same had expired and Ms. Escribano did not recall whether it had been renewed. There is another lease contract executed on March 29, 2012 between Costa Bonita Beach Resort, Inc. and Francisco Falcón Jiménez for the rental of four (4) units for $300 per unit or $1,200 a month for a term of three (3) months. This lease was signed by Francisco Falcón Jiménez and Carlos Escribano Miró (Exhibit B). There is another lease contract between Costa Bonita Beach Resort, Inc. and Sea Breeze Management for the rental of twenty (20) units for $6,000 monthly. The lease contract was signed by the principal of Sea Breeze Management Corporation, Javier Cela and the president of Costa Bonita Beach Resort, Inc., Carlos Escribano Miró (Exhibit C). There is another lease contract executed on March 1, 2012 between Costa Bonita Beach Resort, Inc. and Sea Breeze Management for the rental of four (4) units for $2,250 monthly and the term of the lease is three (3) months. The lease contract was signed by the principal of Sea Breeze Management Corporation, Javier Cela and the principal of Costa Bonita

Beach Resort, Inc., Carlos Escribano Miró (Exhibit D). There is another lease agreement executed on September 26, 2011 between Costa Bonita Beach Resort, Inc. and Sea Breeze Management for the rental of eight (8) units for $2,400 monthly which will be charged to an expense account for repairs. The Debtor will not receive all the monies from the rental of the units. Debtor is receiving the receipts of what is being spent on the improvements of the units and a reconciliation is made. The lease term for this particular contract is twelve (12) months. There is a cap of $30,000 on the amount to refurbish these units and the improvements (repairs) had to be completed during the twelve month term of the lease. The lease contract was signed by the principal of Sea Breeze Management Corporation, Javier Cela and the principal of Costa Bonita Beach Resort, Inc., Carlos Escribano Miró (Exhibit E).

There is another lease contract executed on March 1, 2012 between Costa Bonita Beach Resort, Inc. and Sea Breeze Management for the rental of five (5) units for $1,500 monthly which will be exchanged for repairs to be performed to these villas to prepare the same for renting the same as hotel units. The Debtor benefits from this transaction because the units will be in a better condition for the same to be sold afterwards to any potential buyer. The Debtor would not receive direct payments for the rental of the units. The duration of this lease agreement is for five (5) months (Exhibit F).

The main purpose of the Debtor's second bankruptcy filing is to reorganize and be able to pay all the creditors 100% through the plan, not only favoring DF Creditor that represents 23% or 24% of the list of creditors and to have time to request all the permits for the relocation of the Debtor's access road. Debtor's Disclosure Statement provides that if DEV, S.E.'s claim was allowed for $2,600,000, then the Insider General Unsecured Claimants would not subordinate their claims and will receive a dividend equal to the dividend to all general unsecured claimants on a pro-rata basis which would equal 54% (Docket No. 53, pgs. 9-10). In the event of foreclosure the general unsecured creditors would receive a dividend of zero. The Debtor has also engaged in renting units to provide more cash flow to reorganize the corporation. The rental income generated by the rental of the units will be used in part to pay the administrative expenses. The stockholders will provide the cash flow necessary to continue and finalize the reorganization process. Ms. Escribano testified that with respect to the relocation of the access road, that the Debtor has submitted to ARPE an alternate access

road.

Ms. Escribano identified Exhibit 14 which is a segregation drawing made by Rafael González in 1974. She also identified a plot plan (Exhibit G-1), a segregation drawing made by Rafael González in September 1974. The only difference being that the alternate access road proposed to ARPE has been marked in orange and the existing access road which is currently being used is marked in yellow, the blue marks the limits of Costa Bonita Beach Resort, Inc., and the green marks lots #9 and #10 which are property of DEV, S.E. She does not think that DEV, S.E.'s property is affected by the alternate access road. However, on cross-examination, she testified that the proposed alternate access road marked in orange affected (or touched upon) lot #10 but not lot #9. There is no signed agreement from the owners of lots #8, 9, 10, 11, 15, 23, and 12 to use the alternate access road. However, she stated that one does not need a signed agreement with the owners of these lots to establish the easement as illustrated in Exhibit G-1 because the easement is mentioned in deed #23 and all of the deeds afterwards. Thus, in order for the easement to be approved one needs to go to ARPE and present the deeds in order to obtain the construction permits. Ms. Escribano stated that she did not have an expertise in survey plans or was an engineer. She also stated that DEV, S.E., provided Debtor, through attorney Harold Vicente, with a copy of this map or plan with this option for the alternate access road in open court and that DEV, S.E. does not have an objection to this proposed alternate access road. Ms. Escribano stated that they are waiting for the local agency (ARPE) to determine whether there are any requirements that Debtor has to comply with to complete the process regarding the relocation of the access road. She believes that pursuant to deed #23 the properties owned by Costa Bonita Beach Resort have the right to use the easement.

The homeowners' association fees per unit is $213 (50 units which belong to Debtor) and the commercial unit's fee is $5,556 which total approximately $15,500 monthly expense for homeowner's association fees. Pursuant to the plan, the homeowners' association would receive three (3) units as payment in kind for the debt owed by the Debtor. She did not recall the amount these properties paid in property taxes. The Debtor pays approximately $60,000 per year in insurance. The income generated from the rental of the units does not cover the homeowners' association, property taxes and insurance expenses. She does not recall the exact amount of rental income the Debtor

20

generated in the year 2011. The amount of rental income generated for the year 2011 is less than the amount it is receiving right now. As has been done in the past, the shareholders and/or principals will provide the cash necessary to cover whatever administrative expense needs to be paid.

*Debtor's second witness: CPA Luis Rafael Carrasquillo*

Mr. Luis Rafael Carrasquillo, a certified public accountant, and the appointed financial advisor in the instant case, testified that he assisted Debtor in the preparation of the cash flow projections, liquidation analysis and other matters related to the claims reconciliation and other financial information. Mr. Carrasquillo stated that the liquidation analysis reflects that the gross value of the Debtor's assets as of March 31, 2012 is approximately $15 million and that the estimated recovery value from the assets in a liquidation scenario would be approximately $8.8 million. Consequently, upon liquidation the unsecured creditors and the priority tax claims creditors would not receive a dividend after the payment to all secured creditors and the chapter 7 and chapter 11 administrative expenses.  In a Chapter 11, as reflected in the Disclosure Statement, all classes of creditors would receive 100% of their claims, without considering the general unsecured claims for insiders. The cost in a chapter 11 is estimated at $120,000, and in a chapter 7 the cost is estimated at $950,000.

Mr. Carrasquillo stated that it was very likely for the Debtor to be able to implement an effective plan of reorganization based on the projections, the commitment of the shareholders in assisting Debtor in the payment of administrative expenses, considering that all the secured claims would be paid with thirty five (35) units, and that the administrative expenses such as insurance, property taxes, maintenance and repairs would be reduced significantly after reducing the inventory. Mr. Carrasquillo clarified that the liquidation analysis does not consider whether the easement would be constituted in favor of Costa Bonita.

Uncontested Facts

The parties agree that the following facts are uncontested:

1. On February 3, 2009, Debtor filed its first bankruptcy petition (case number 09-00699) under the provisions of Chapter 11 of Title 11 of the United States Code.

2. On May 10, 2011, Debtor's first bankruptcy petition was dismissed by Order of the Court (Case Nu. 09-00699, Docket No. 413).

21

3. On February 2, 2012, Debtor filed its second bankruptcy petition for relief under the provisions of Chapter 11 of Title 11 of the United States Code.

4. Debtor is a for profit corporation duly organized under the laws of the Commonwealth of Puerto Rico under registration number 126423 issued by the Division of Corporations ascribed to the Department of State of the Commonwealth of Puerto Rico.

5. Debtor is the owner of property number 391 recorded at page 280 of volume 9 of Culebra and property number 428 recorded at page 172 overleaf of volume 10 of Culebra, at the Registry of the Property of Puerto Rico, Section of Fajardo.

6. Properties 391 and 428 were grouped by deed number 13 executed on December 30, 1999 before notary public Francisco José García García.

7. Debtor developed on such grouped property a condominium known as "Costa Bonita Beach Resort Condominium."

8. On June 25, 2003, the horizontal property regime of the Costa Bonita Beach Resort Condominium was constituted pursuant to deed number 13 of notary public Francisco José García García.

9. On June 4, 2007, said deed was amended and restated by deed number 17 before notary public Francisco José García García.

10. The Costa Bonita Beach Resort condominium consists of 41 buildings or clusters with a total of 164 residential units, and a separate building containing a multipurpose commercial unit of 16,294.16 feet.

11. The Costa Bonita Beach Resort condominium has fifty (50) residential units pending segregation from the horizontal property regime and one commercial unit.

12. Properties 391 and 428 were segregated from property 390 recorded at page 277 of volume 9 of Culebra on October 24, 1974.

13. On October 9, 2008, Doral Bank, lender's predecessor in title filed a complaint under case number NSCI 2008-00830 for collection of monies and mortgage foreclosure against Debtor and Carlos Escribano Miró and his spouse Aida Ramallo Díaz by and on behalf of the communal partnership; Estaban Ramallo Díaz and his spouse Ana Rolán Hasabeth by and on behalf of the

22

communal partnership; and Angel Ramallo Díaz and his spouse María Yllanes Novo by and on behalf of the communal partnership at the Commonwealth of Puerto Rico Court of First Instance, Fajardo Section which has been stayed due to the filing of Debtor's Chapter 11 bankruptcy petition.

14. On April 8, 2011, the Court of First Instance in case number NSCI 2008-00830 issued a resolution authorizing the substitution of Doral Bank for DF Servicing.

15. The Debtor is indebted to the loan granted by Doral Bank, the principal amount of $3,746,419.91 plus accrued and unpaid interest of $1,092,259.70 for a total principal plus interest amount of $4,838,679.61.

16. The Debtor has no employees.

17. Since February 2, 2009, the Debtor has not paid personal property and real estate taxes to the Center for Municipal Revenues (CRIM).

Applicable Law and Analysis

*Disclosure Requirements pursuant Fed. R. Bankr. P. 2014 & & Conflicts of Interest pursuant 11 U.S.C. §§327(a) & 101(14)*

In addition to the court's conclusions dictated from the bench on May 16, 2012, the court now supplements its ruling as follows. Fed. R. Bankr. P. 2014(a) governs the requirements regarding the employment of professional persons. Fed. R. Bankr. P. 2014 is pivotal because it is the mechanism by which information is provided to the court and the United States Trustee to determine whether the professional's employment is in the best interest of the estate. See Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶2014.03 (16th ed. 2012). Fed. R. Bankr. P. 2014(a) requires that the attorney to be employed by the debtor, disclose "...any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants." Fed R. Bankr. P. 2014(a). The application for employment must also be accompanied by a verified statement which discloses, "the persons connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants." Fed. R. Bankr. P. 2014(a). Although Fed. R. Bankr. P. 2014 does not require continuous disclosure, courts have interpreted that the professional has the self-imposed obligation to continuously update and fully disclose to the court whether there are any

23

circumstances which might suggest either an actual or potential conflict.  See Kagan v. Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 647 (B.A.P. 1st Cir. 1999) citing Rome v. Braunstein, 19 F. 3d 54, 59 (1st Cir. 1994). "Although an attorney need not disclose every past or remote connection with every party in interest, he must disclose those presently or recently existing, whether they are of a business or personal in nature, which could reasonably have an effect on the attorney's judgment in the case." In re El San Juan Hotel Corp., 239 B.R. at 647.

Fed. R. Bankr. P. 2014 implements Section 11 U.S.C. §327(a).  Section 327(a) is the statutory provision that establishes the standard of conflicts of interests regarding the employment of professionals, including debtor's attorney.  Section 327(a) provides in its pertinent part;

> "[e]xcept as otherwise provided in this section, the trustee[1], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. §327(a).

Thus,  an attorney may be employed by a debtor if the two prong test of 11 U.S.C. 327(a) is satisfied, that is, that said attorney: (1) does not hold or represent an interest adverse to the estate; and (2) that he or she is a disinterested person. The First Circuit has recognized that there is an overlap in the two prongs of Section 327(a) to determine whether a professional has a conflict of interest. See In re Martin, 817 F.2d 175,179 (1st Cir. 1987) ("It can readily be appreciated that the concepts of disinterest on the one hand, and materially adverse interest, on the other hand, are somewhat intertwined"). The First Circuit has established that, "these statutory requirements disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." Rome v. Braunstein, 19 F. 3d at 58.

Section 101(14) defines the term "disinterested person" as a person that;

> "(A) is not a creditor, an equity security holder, or an insider;

---

[1] The authority for a debtor in possession to employ professional persons stems from the interplay between 11 U.S.C. §327(a) and §1107. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶327.05[1] (16th ed. 2012).

(B) is not and was not, within 2 years before the date of the filing of the petition a director, officer or employee of the debtor; and

(C) does not have an interest materially adverse to the to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. §101(14).

The Bankruptcy Code does not define the phrase "interest materially adverse to the interest of the estate." However, "[c]ourts interpret it as 'the possessing or asserting of any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real." Kagan v. Stubbe (In re El San Juan Hotel Corp.), 239 B.R. 635, 646 (B.A.P. 1st Cir. 1999) citing Electro-Wire Prods. v. Sirote & Permutt, P.C. (In re Prince), 40 F. 3d 356, 361 (11th Cir. 1994). The concept of "adverse interest" has been interpreted "as the possession or assertion [of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which... of them the disputed right or title to the interest in question attached under valid and applicable law; or (2) [the possession] of a predisposition or interest under circumstances that render such bias in favor of or against one of the entities." Rome v. Braunstein, 19 F.3d 54, 58 at n.1 (1st Cir. 1994) citing In re Roberts, 46 Bankr. 815, 822 (Bankr. D. Utah 1985). The First Circuit has established a test to determine whether the two prong test of Section 327(a) has been satisfied. The court must analyze the facts of the case at hand to assess whether the targeted interest creates "...either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors–an incentive sufficient to place those parties at more than acceptable risk–or the reasonable perception of one." In re Martin, 817 F.2d at 180.

DF Servicing argues that Debtor's counsel fails to satisfy the "disinterested" requirement of Section 327(a) and the definition of "disinterested person" of section 101(14)(C) because Debtor's counsel may not represent the Debtor and accept monies from Debtor's principals and/or affiliated (related) companies (entities) which are also creditors of the estate since this creates an actual or potential conflict of interest for Debtor's counsel since he would be serving two masters. DF

25

Servicing also argues that Debtor's counsel in the prior bankruptcy case disclosed incorrectly that the payments made to Debtor's counsel would be paid by Debtor or related entities belonging to the shareholders of Costa Bonita Holding, Inc., and this provides a basis for disqualification.

This court finds that the Cuprill Law Firm is not currently representing or has represented any of the creditors which are in turn affiliated corporations of Debtor and whose shareholders are common to the shareholders of the Debtor's sole shareholder; namely Costa Bonita Holding Company, Inc. In the prior case there were payments made by Debtor's related entities to the Cuprill Law Firm. Even though they may not have been fully disclosed in the prior case, the same have now been clarified to this court as it relates to the motion to disqualification. In the instant case, Debtor's counsel has not received a retainer from related entities that are creditors as pursuant to Debtor's counsel Disclosure of Compensation under Fed. R. Bankr. P. 2016 (Docket No. 3). Debtor's counsel in the verified statement attached to his application for employment disclosed in paragraph 6[2] that the source of the funds of Debtor's counsel compensation will be from Debtor and/or by entities related to or belonging to Costa Bonita Holding Company, Inc.'s shareholders (Docket No. 6).

The court concludes that Debtor's counsel's compensation payments from creditors of the Debtor that are related entities with common shareholders does not create for Debtor's counsel a "meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than an acceptable risk-or the reasonable perception of one," since these creditors, which are related entities, do not have an adverse interest to that of the bankruptcy estate.

*Dismissal pursuant 11 U.S.C. §1112(b)(4)*

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court after notice and a hearing to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the

---

[2] Paragraph 6 of Debtor's counsel verified statement of the application for compensation states; "[t]he source of funds to be paid to Applicant by Debtor, if authorized by this Honorable Court, shall be from such funds as may be available to Debtor, as may be contributed on Debtor's behalf by Debtor's shareholder Costa Bonita Holding Company, Inc. or by entities related to or belonging to Costa Bonita Holding Company, Inc.'s shareholders." (Docket No. 93, paragraph 6)

estate, if the movant establishes cause and the case is devoid of unusual circumstances pursuant to 11 U.S.C. §1112(b)(2). 11 U.S.C. §1112(b)(1). Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means but provides a list of circumstances which constitute "cause" for conversion or dismissal. This list of causes is nonexhaustive, thus a case may be converted or dismissed for other causes. See AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007).

The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2012). "Thus, until the movant carries the burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. The court, after finding cause, has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008); 2008 WL 4531982. However, if the movant proves that there is cause for dismissal pursuant to 11 U.S.C. §1112(b)(4) by the preponderance of the evidence standard, the court must find that movant has established cause. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2012).

Once "cause" has been established, the burden shifts to the debtor to identify unusual circumstances that evince that conversion or dismissal is not in the best interest of creditors and the estate. Even, if there are no unusual circumstances, the court may not convert or dismiss a case if the debtor establishes and the court finds that: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the 'cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Peroleum, Inc. 395 B.R. 145, 148 (Bankr. D. N.M. 2008).

*Bad Faith*

Good faith is not a statutory requirement for the filing of a Chapter 11 petition. However, it is a requirement for a Chapter 11 plan to be confirmed. 11 U.S.C. §1129(a)(3). The unsettled issue is whether lack of good faith (or bad faith) may constitute "cause" to dismiss a Chapter 11 petition under 11 U.S.C. §1112(b)(1). See Ali M.M. Mojdehi & Janet Dean Gertz, *The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of a Rationale?,* 14 Am. Bankr. Inst. L. Rev. 143 (2006). Any determination of good faith, or lack of good faith (bad faith) is fact intensive and must consider the totality of the circumstances on a case by case basis. In Chapter 11 cases the court must carefully consider the distinctions between liquidation and reorganization as both are valid objectives under the Bankruptcy Code.

Several Circuits have determined that lack of good faith (or bad faith) in filing a chapter 11 bankruptcy petition constitutes "cause" to dismiss or convert a case to Chapter 7 pursuant to 11 U.S.C. §1112(b). See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F. 2d 1068 (5th Cir. 1986); In re Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture), 936 F. 2d 814 (5th Cir. 1991); Carolin Corp. v. Miller, 886 F. 2d 693 (4th Cir. 1989); Trident Assocs. Ltd. Partenership v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. Partnership), 52 F. 3d 127 (6th Cir. 1995); NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108 (3rd Cir. 2004); In re Albany Partners, Ltd., 749 F. 2d 670 (11th Cir. 1984). The First Circuit has not decided whether lack of good faith (or bad faith) in the filing of a Chapter 11 bankruptcy petition constitutes "cause" under 11 U.S.C. §1112(b). See Fields Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.), 490 F. 3d 21, 24 (1st Cir. 2007). One court declined the proposition that 11 U.S.C. §1112(b) imposes a good faith filing requirement in a SARE case. See In re Victoria Ltd. Partnership, 187 B.R. 54, (Bankr. D. Mass. 1995).

The First Circuit has determined that if 11 U.S.C. §1112(b) imposes a good faith filing requirement, then it is the movant that must establish *prima facie* that the petition was filed in bad faith before the burden shifts to the debtor. See In re Capitol Food Corp., 490 F. 3d at 24 ("Although the bankruptcy court held that subsection 1112(b) imposes no good faith filing requirement, we need not address this matter in the present case. Even the courts which have found a good faith filing

requirement would demand that Fields Station first make a *prima facie* showing that Capital Food filed its petition in bad faith."); Farnsworth v. Morse (In re Farnsworth), 2009 Bankr. Lexis 3699, *18, (B.A.P. 1st Cir. 2009); In re Miller, 2009 Bankr. Lexis 3351, *4 (Bankr. D. Mass. 2009). The First Circuit noted that, "[c]atastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection." In re Capitol Food Corp., 490 F. 3d at 25 citing In re Liberate Techs., 314 B.R. 206, 216 (Bankr. N.D. Cal. 2004). The First Circuit also observed that a good faith petition must seek to preserve or create some value that would otherwise be lost outside of bankruptcy and that it is not bad faith to seek to gain an advantage from declaring bankruptcy. Id. at 25.

The determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances. See In re Farnsworth, 2009 Bankr. Lexis 3699, *20 citing Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F. 3d. 474, 482 (1st Cir. 2005) aff'd, 549 U.S. 365 (2007). Lack of good faith or bad faith is atypical conduct that constitutes an abuse of the bankruptcy process. See Marrama v. Citizens Bank, 549 U.S. 365, 375, fn. 11 (U.S. 2007); Berliner v. Pappalardo (In re Puffer), 674 F. 3d 78, 82 (1st Cir. 2012). Good faith is driven by the congressional intent of Chapter 11 relief. "Chapter 11 is designed to offer greater recovery for creditors and equity owners than liquidation in a Chapter 7 case by providing a means by which financially distressed businesses or individuals may restructure their finances by obtaining confirmation of a plan which provides either a continuation of the business, or retention or orderly sale of assets, and exiting bankruptcy relieved of burdensome debts and obligations." Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, §11.1 (5th ed. 2011).

The totality of the circumstances test cannot be reduced to a mechanical checklist (irrespective of the chapter or whether it is in the filing of the petition and/or the confirmation of the plan). See In re Puffer, 674 F. 3d at 81 ("The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith"). The

First Circuit has determined that, "in all events, good faith is a concept not a construct. Importantly, it is a concept that derives from equity. This matters because equitable concepts are particularly insusceptible to per se rules." In re Puffer, 674 F. 3d 78, 82. Thus, this court, in conformity with the determinations of the First Circuit in In re Puffer rejects the mechanical checklist approach for a determination of lack of good faith (or bad faith) for all cases, irrespective of whether they are SARE cases. Good faith is an abstract idea generalized from particular circumstances and not a working assumption.

It is important to note that for SARE cases in particular, Section 362(d) was amended in 1994 to provide relief from the automatic stay to SARE cases if the debtor failed to make certain payments to a secured creditor or if a confirmable plan is not filed within a certain limited period. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.07[6][ii] (16th ed. 2012)("Recognizing both the potential for abuse as well as, implicitly, the potential legitimacy of certain cases in this context, Congress amended section 362 in 1994 to provide that, with respect to single asset cases involving real estate, relief from the automatic stay would be granted to the holder of a security interest in the asset if a confirmable plan is not filed within a relatively circumscribed period of time or the debtor fails to make certain payments to the secured creditor. The presence of the specific single asset real estate provisions strongly suggest that such cases are not per se filed in bad faith").

In the instant case, DF Servicing alleges that Debtor which is a SARE case filed its second bankruptcy petition in bad faith, because it conforms to the checklist which other Circuits have found as indicative of a bad faith failing; namely, (i) Debtor is a SARE case; (ii) Debtor has few unsecured creditors which are non-insiders which the Debtor owes $934,000 consisting mostly of contractors and miscellaneous claims (excluding the DEV, S.E. claim) of which most are small in relation to the amount owed to secured creditors pursuant to its schedules; (iii) the real estate property was on the verge of being foreclosed in state court proceedings; (iv) this is a two party dispute between Debtor and DF Servicing which can be resolved with the foreclosure sale of the property; (v) Debtor has little or no cash flow; (vi) Debtor is unable to pay homeowner's association fees, personal and real estate taxes; (vi) Debtor has no employees; (vii) there is no pressure from non-moving creditors, other than

30

the DEV, S.E. easement case; (viii) Debtor's first bankruptcy petition was dismissed for failure to maintain adequate insurance; (ix) Debtor has no possibility of reorganization coupled with the fact that it has failed for over 3 years to secure an access point to the property; (x) Debtor filed solely to create an automatic stay and forestall the foreclosure of the real estate property; (xi) the Debtor's bankruptcy case serves no valid bankruptcy purposes because the Debtor is not a "going concern;" and (xii) the Debtor's case was commenced primarily as a litigation tactic to frustrate DF Servicing's exercise of its remedies.

DF Servicing relied on the uncontested facts to establish the alleged factors constituting bad faith. The factors enumerated by DF Servicing pertain to the "mechanical checklist" to which SARE cases, by their very nature, have been circumscribed to by some Circuits. The fact that the Debtor is a SARE case is not by itself an indicia of a bad faith filing. The fact that there was a pending motion for summary judgment for the foreclosure of Debtor's property in state court by its secured creditor and that Debtor probably filed the instant case to benefit from the provisions of the automatic stay to prevent DF Servicing from foreclosing on its property and exercising its remedies is the main (generally) reason as to why debtors in financial distress seek Chapter 11 protection. See H. Miles Cohn, *Good Faith and the Single Asset Debtor*, 62 Am. Bankr. L.J. 131 (1988).

The Debtor filed its Disclosure Statement and Plan of Reorganization on April 30, 2012 (Docket Nos. 53 & 54). The same have not been scheduled for a hearing pending a decision on the contested matters subject of this Order. Whether the Debtor has no possibility of reorganization, coupled with being unable to relocate the access road, are feasibility issues that are premature at this juncture.

The total current value of Debtor's real estate is $12,243,170.00 as disclosed in Schedule A-Real Property (Docket No. 14). DF Servicing (Doral Bank) has a first mortgage and FirstBank Puerto Rico has a second mortgage over Debtor's 50 residential apartments which are valued at $9,674,170 (Docket No. 14, Schedule A). DF Servicing's mortgage claim amounts to $4,052,672.32 and FirstBank Puerto Rico's second mortgage claim amounts to $1,321,045.62, exclusive of unpaid and accrued interests (Docket No. 39). The Debtor has other secured creditors and its unsecured priority claims total $293,220.98 (Docket No. 39, Schedule E-Creditors Holding Unsecured Priority Claims).

31

Debtor's non-insider creditors holding unsecured nonpriority claims, exclusive of DEV S.E.'s claim[3] for $2,600,000, amounts to $937,085.36. DF Servicing may be the Debtor's largest creditor, but by itself, may not control the outcome of this case, wherein it appears that there is equity for the benefit of the estate.

The evidence presented to the court during the May 16, 2012 hearing shows that Debtor filed for bankruptcy protection to maximize its assets and to be able to satisfy not only its secured creditors but the creditors which hold unsecured priority claims and those who hold general unsecured claims. Asset maximization to satisfy the unsecured creditors to the greatest extent possible is one of the core principles of the Bankruptcy Code. These factors outweigh that Debtor currently has no employees, and does not currently have the cash flow necessary to pay the homeowner's association fees. Debtor filed this Chapter 11 bankruptcy petition as a means to seek to preserve the value of its assets that would otherwise diminish outside bankruptcy. Debtor's reasons for filing its Chapter 11 petition comport with the First Circuit's view that the "[t]wo primary purposes of chapter 11 relief are the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims." In re Capitol Food Corp., 490 F. 3d at 25. Thus, DF Servicing has failed to establish *prima facie* that Debtor filed its bankruptcy petition in bad faith, that is, through atypical conduct which constitutes an abuse of the bankruptcy process. Moreover, the Debtor has established that it filed the petition in good faith. Therefore, the court denies the request to dismiss the petition as having been filed in bad faith as it was filed to preserve and maximize assets for the benefit of all creditors of the estate.

*11 U.S.C. §1112(b)(4)(A)*

DF Servicing also requests dismissal of the instant case based upon 11 U.S.C. §1112(b)(4)(A). Section 1112(b)(4)(A) provides that cause includes, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A); See In re DCNC N.C. I, LLC, 407 B.R. 651, 664 (Bankr. E.D. Pa. 2009). This particular "cause"

---

[3]DEV, S.E. filed claim #17-1 on June 7, 2012 in the amount of $2,600,000 based on a state court judgment.

consists of two (2) requirements which must be satisfied. "First, it tests whether, after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively declining asset values. Second, it tests whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's enterprise back on a solid financial footing within a reasonable amount of time." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][a] (16th ed. 2012). DF Servicing argues that this case should be dismissed under 11 U.S.C. §1112(b)(4)(A) based upon the following; (i) "Debtors's Schedules and Statement of Financial Affairs in this new case show a substantial and continuing loss to or diminution of the estate when compared to the Schedules and Statement of Financial Affairs in the [p]rior [b]ankruptcy [c]ase;" (ii) Debtor has no reasonable likelihood of rehabilitation because a chapter 11 plan cannot be confirmed within a reasonable time; (iii) Debtor has failed to sell any units since May of 2009; and (iv) Debtor is leasing the remaining unit inventory at below market rates to an entity controlled by an insider and most of the income derived will be used for administrative expenses at the expense of other creditors (Docket No. 48).

At the evidentiary hearing, CPA Escribano, testified that the income generated from the rental of the units does not cover the homeowners' association fees, property taxes and insurance expenses. Mrs. Escribano further testified that the Debtor's yearly insurance expense amounts to approximately $60,000 and that the homeowners' association monthly fees were approximately $15,500. CPA Escribano stated that as been done in the past, the shareholders and/or principals would provide the cash necessary to cover whatever administrative expense needs to be paid. Moreover, this court notes that of the six (6) leases to rent the residential units and the commercial units, five (5) of them have already lapsed. The court is unaware of whether these leases have been renewed. The remaining lease has a term of one year which lapses on September 26, 2012 by which the Debtor will not receive the monies from the rental of the units because said funds will be charged to an expense account for the repairs that will be done on these units. Thus, the court finds that the first prong under Section 1112(b)(4)(A) has been satisfied, as Debtor's expenses are greater than its income, which at this point in time is uncertain, because five of the six leases have already lapsed. The second prong under Section 1112(b)(4) is whether the debtor has a reasonable likelihood of rehabilitation. Rehabilitation

has been defined as whether the debtor will be able to reestablish its business. "...the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas, confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[6][a][ii] (16th ed. 2012). The plan filed on April 30, 2012 does not provide for the liquidation of all of Debtor's assets. On the other hand, at this juncture there is really no core business to reestablish. These issues were not addressed by DF Servicing in light of the evidence presented at the May 16, 2012 hearing. Therefore, DF Servicing did not meet its burden under Section 1112(b)(4)(A).

Additionally, in the instant case, there is an "unusual circumstance" which is that the Debtor's plan of reorganization contemplates to pay the secured and unsecured creditors (excluding the unsecured insider creditors) in full, a proposition that is consistent with one of the purposes of the Bankruptcy Code, which is to protect the interests of unsecured creditors. The unsecured creditors will be in a much better economic position if the plan is confirmed than if the same were dismissed or converted, as they will not receive any dividend. See In re Orbit Petroleum, Inc., 395 B.R. at 148-149. The liquidation analysis explicated by CPA Carrasquillo so establishes.

In view of the above, the court finds that a preponderance of the evidence does not establish cause to dismiss under 11 U.S.C. §1112(b)(4)(A).

*Appointment of a Trustee or Examiner pursuant to 11 U.S.C. §1104(a) & (c)*

Section 1104(a) provides in pertinent part that;

> "...on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee–
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> >
> > (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. " 11 U.S.C. §1104(a)(1).

The appointment of a trustee is an extraordinary remedy and should be analyzed on a case by case basis to determine whether "cause" exists. See Tradex Corp. v. Morse, 339 B.R. 823, 825-826 (D. Mass. 2006). The movant seeking the appointment of a trustee bears the burden of proof. The First Circuit has not expressed itself on whether the standard of proof is by the preponderance of the evidence or clear and convincing evidence. See Tradex Corp. v. Morse, 339 B.R. at 826-827. However, at least one court has determined that the applicable standard of proof is the preponderance of evidence. Id at 832 ("...under 1104(a), factual findings for appointment of a trustee must be made to a preponderance of the evidence by the appointing judge, and should be reviewed under a clearly erroneous standard, while the determination that such evidence is sufficient to show cause for appointment will be evaluated for an abuse if discretion"). The determination of whether there is "cause" such as fraud, dishonesty and incompetence is fact intensive. Fact intensive determinations should be made under the preponderance of the evidence standard after considering the totality of the circumstances on a case by case basis.

The statutory grounds listed for cause are nonexclusive, thus there may be a finding of "cause" based on other factors. See Tradex Corp. v. Morse, 339 B.R. at 830; Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1104.02[3][c][i] & [ii] (16th ed. 2012). If "cause" exists, then the court "shall" appoint a trustee. However, the court has discretion in considering all the relevant facts. See In re 1031 Tax Group, LlC, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007) citing In re Sharon Steel Corp., 871 F.2d, 1217, 1226 (3rd Cir. 1989); In re Adelphia Communs. Corp., 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006).

It is the moving party's burden to establish that there is cause to appoint a trustee, and absent a showing of need for the appointment of a trustee, there is a strong presumption that the debtor should be permitted to stay in possession. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1104.02[3][b][i] (16th ed. 2012). This presumption is based upon the general assumption that current management (debtor in possession) is better able to run the business for the benefit of the creditors and the estate. See Tradex Corp. v. Morse, 339 B.R. at 826; In re SunCruz Casinos, LLC, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003). The "reference to 'gross mismanagement' represents tacit recognition that some degree of mismanagement exists in virtually every insolvency case and that

35

mere mismanagement does not, by itself, constitute cause." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1104.02[3][c][i] (16th ed. 2012).

In the instant case, this court finds that DF Servicing has not satisfied its burden of proof regarding the appointment of a trustee based on "cause" since it relied on self-serving allegations. No evidence was presented at the evidentiary hearing to support the same. In addition, DF Servicing failed to explain how the appointment of a trustee under 11 U.S.C. §1104(a)(2) would benefit the interests of creditors, any equity security holders and other interests of the estate. The only reason DF Servicing alludes to for the appointment of an independent trustee is that; "[i]t is in the best interests of creditors to have an independent trustee to assume control over the estate, to evaluate any preferential or fraudulent transfer actions, to pursue those actions, and to potentially provide a return to the unsecured creditors" (Docket No. 37, pg. 16, paragraph 43). The court finds that this allegation is not supported by the evidence presented to the court. Contrariwise, in the instant case, insiders have transferred monies to Debtor to pay its administrative expenses. Moreover, DF Servicing has also failed to explain (provide a cost-benefit analysis-balancing of costs and benefits) how the appointment of a trustee under §1104(a)(2) outweighs the detriment to the estate; namely the cost of appointing the same and the professionals the trustee may employ. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1104.02[3][d][ii] (16th ed. 2012) ("The 'interests' standard suggests a balancing of costs and benefits in determining whether the appointment of a trustee is appropriate. Such an appointment would be in the interests of the estate if the benefits to all interests of the estate to be derived from a trustee outweigh the detriment to the estate").

The appointment of an examiner of the estate is governed by 11 U.S.C. §1104(c) that provides in pertinent part:

> "[i]f the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of any party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if–
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

36

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000." 11 U.S.C. §1104(c).

This court finds that in the instant case, the Debtor's "fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider" do not exceed the $5,000,000 threshold, thus the mandatory appointment of an examiner pursuant to Section 1104(c)(2) is inapplicable. In addition, this court concludes that at this juncture there are no grounds that would justify the discretionary appointment under 11 U.S.C. §1104(c)(1) of an examiner that is in the "interests of creditors, any equity security holders, and other interests of the estate." See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1104.03[3](16th ed. 2012) ("Mere allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the debtor ir by current or former management, are insufficient to justify the appointment of an examiner under section 1104(c). Such allegations of misconduct must be supported by facts").

*Abstention pursuant to 11 U.S.C. §305(a)*

Section 305(a) provides in pertinent part;

"[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if–
(1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. §305(a)(1).

The movant bears the burden to prove that dismissal or suspension benefits both the debtor and its creditors. Dismissing a case pursuant to 11 U.S.C. §305(a)(1) is a discretionary remedy determined by courts on a case by case basis. See In re Monitor Single Lift I, ltd., 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008). Moreover, "section 305 is reserved for those rare occasions when both the creditors generally and the debtor itself are better served by dismissal or suspension." Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶305.01[1](16th ed. 2012); See also; In re Monitor Single Lift I, ltd., 381 B.R. at 462 ("Granting an abstention motion pursuant to §305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief."). This particular remedy should not be used as a substitute for a motion to dismiss under other applicable sections of the

37

Bankruptcy Code. Id. at ¶305.02. "Accordingly, parties who wish to seek dismissal of a case based primarily on the debtor's misconduct or bad faith should invoke, in most instances, the dismissal provisions contained in the relevant chapter under which the case was filed." Id. at ¶305.02[1]. The factors some courts consider to dismiss a case under Section 305(a)(1) include; (i) the purpose of the bankruptcy; (ii) the availability of a more appropriate forum to decide the unsettled issues; (iii) efficiency and economy of administration; and (iv) the interests of the creditors and debtor. See In re Seff Enters. & Holdings, LLC, 2010 Bankr. Lexis 862, **4 (Bankr. D.NH. 2010) citing In re Deacon Plastics Machine, Inc., 49 B.R. 982, 982 (Bankr. D. Mass. 1985); In re Nesenkeag, Inc., 131 B.R. 246,247 (Bankr. D.N.H. 1991). Other courts have applied a seven factor test which considers the following; (i) the economy and efficiency of administration; (ii) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (iii) whether federal proceedings are necessary to reach a just and equitable solution; (iv) whether there is an alternative means of achieving an equitable distribution of assets; (v) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (vi) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (vii) the purpose for which bankruptcy jurisdiction has been sought. In re Monitor Single Lift I, ltd., 381 B.R. at 464-465 citing In re Paper I Partners, L.P., 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002); In re 801 South Wells Street Ltd. Partnership, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996). Irrespective of the factors that should be considered as applicable to this case, no evidence was presented that would support any factor, therefore, DF Servicing did not meet its burden of establishing that abstention under 11 U.S.C. §305(a) is in the best interest of both the Debtor ans all the creditors.

DF Servicing argues in the alternative that this court should abstain from hearing this case and dismiss it pursuant to Section 305(a) based upon the following: (i) this is a two party dispute which is pending final disposition of the real estate property in a foreclosure sale in state court; (ii) "[g]oing forward with this bankruptcy case only adds an additional and unnecessary layer of litigation and expenses to the dispute between the Debtor and [DF Servicing], and delays [DF Servicing] from realizing on its collateral after the Debtor has been in default under the loan documents since 2008

38

and after [DF Servicing] and the Debtor have already been involved in litigation for over two years;" (iii) the state court forum is available to decide the issues and protect the interests of the Debtor and DF Servicing in particular the summary judgment for the foreclosure of the real estate property; (iv) this case was filed to prevent a judicial sale of the property in the state foreclosure case; (v) DF Servicing will be prejudiced if Debtor's case is not dismissed because it will delay the execution of its contractual and legal rights to sell the property to satisfy its debts; (vi) the Debtor will not be prejudiced if the case is dismissed because the Debtor's sole asset is subject to DF Servicing's mortgage lien; and (vii) Debtor's unsecured creditors will not be prejudiced if the case is dismissed because they will receive nothing whether the petition is dismissed or not; (viii) the Debtor is using its Chapter 11 petition to delay the inevitable foreclosure sale of the property (Docket No. 48).

This court finds that DF Servicing's arguments are premised on unsupported allegations which fail to evince how dismissal will benefit both the Debtor and its creditors. DF Servicing has only demonstrated how dismissal would serve its own interests as a mortgage holder that seeks foreclosure of the Debtor's property in state court. See Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶305.02[2][d] (16th ed. 2012). This court finds that DF Servicing's request for dismissal pursuant to Section 305(a) should not be used as an alternative remedy for a motion to dismiss under Section 1112(b). Thus, this court concludes that DF Servicing has failed to satisfy its burden of proof on this particular issue.

Conclusion

In view of the foregoing, the court: (1) denies DF Servicing's motion to dismiss pursuant to 11 U.S.C. §1112(b)(4)(A) and for bad faith (lack of good faith); (2) denies DF Servicing's request for the appointment of a Chapter 11 trustee or examiner under 11 U.S.C. §1104(a);  and (3) denies DF Servicing's alternative remedy requesting dismissal under 11 U.S.C. §305(a).

SO ORDERED.

In San Juan, Puerto Rico, this 27th day of August, 2012.

Enrique S. Lamoutte
United States Bankruptcy Judge